All right, our second case is Bulger v. Hurwitz. Mr. McCammack, am I pronouncing that right? That's correct, Your Honor. Whenever you're ready. Sorry, I need to put this... Little shower cap, we call him in my courtroom. A little business on him. Not very respectful, but that's still what we call him. I have not been before the court since the pandemic. Good morning. May it please the Court. My name is J.T. McCammack, and sitting to my left is Anthony Warner. We're both attorneys representing the appellate in this matter, and we're from Wheeling, West Virginia. At the federal courthouse in Wheeling, West Virginia, when it was enhanced and redone and made into new in 2005, Senator Byrd spoke at this dedication, and at the courthouse, if you've been there, over half of the front of the courthouse is glass, and you can see it's clear glass. It's not tinted or stained in any way, and Senator Byrd made comments about how that was appropriate, and that was just and fitting because that allows the populace, the citizens, to see the courts work, allows the citizens to see that their rights are being protected, and allows them to see all the machinations of what goes on. Courts in that spirit frequently decide cases on their merits. They decide cases using the facts and, of course, applying the law. In this case, that spirit hasn't happened yet because what has happened is a curtain's pulled across, and we don't have the facts. We don't have access to what courts traditionally need to decide the merits of a case. If you look, as you, I'm sure, have, in the joint appendix, you will note, rather unusually, it is basically a procedural history. There are very few facts in that, J.A. Well, that's because the court found on the face of the complaint that it couldn't go forward. It's not a valid Bivens complaint. So can we start there? Do you agree or disagree that your allegations allege a new Bivens context? We disagree. Our position is we disagree, Your Honor, and you're right. The court dispensed with this case both on Bivens and on FDCA, Federal Court Claims Act. So as to Bivens, the Supreme Court, of course, came out in Ziegler v. Abbasi with this framework of what needs to happen, and it's a two-part analysis, a two-part step, and that's fact-based. Right. In the first one, go ahead. I'm sorry. Thank you, Your Honor. Finish your sentence. So it's a fact-based analysis. The Supreme Court has laid out various cases, only one of which really applies here, the Carlson v. Green case, on what can you match your case to so that we'll accept a Bivens claim, basically. So in the Carlson v. Green case, that's a medical case. That's a case about a prisoner who they failed to treat him properly. They were deliberately indifferent to his needs, and he ultimately died. And here we don't have a – you're not alleging a deliberate indifference to his medical needs, are you? No, we are. We have allegations within the complaint regarding his medical treatment, and that's part and parcel of this saga of how he ended up a dead inmate within hours after being at Hazleton. He was a medical case. That medical case was not being treated properly. He was put into the SHU for months and months. So that's your Bivens complaint, indifference to medical care. Is that it? That's correct, Your Honor. Okay. Well, that's not precisely like what was at issue in Carlson, is it? And the Supreme Court has said since Carlson that the issues have to be precisely a match. How are the facts of this case precisely a match with Carlson? Part of that answer is, and the major answer to that question, Your Honor, is we don't know because we have not been able to get medical records, all that sort of thing. In fact, as you know, there's a motion before the Court to add a recent report from the OIG that gets into that somewhat and discusses these various medical records and treatment and indifference and whether it was done properly, et cetera. So at this point, that set of facts is not before the Court. Additionally, the facts that we are aware of indicate that this is going to fit within Carlson v. Green. But I can't stand here and tell the Court that it fits precisely at this moment. You think it's going to, if you had discovery, it would fit precisely? How would that be? I believe that once the medical records are pulled, once access to the medical professionals within the Bureau of Prisons and others perhaps are reviewed, testimonies taken, cross-examination occurs, that out of that, then the Court will have the facts necessary to see if this case does indeed fit within Carlson v. Green. We think it does based upon the generalized facts that we have. And the generalized facts we have, of course, is the JA Joint Appendix shows our media accounts of various people complaining about it, saying it's outrageous, it should never have happened, et cetera. But we don't have the kind of facts that are necessary. You're not, the problem is you're not talking about the alleged lack of medical care or insufficient medical care. You're talking about the decision to transfer Mr. Bolger, right? I think that those things are joined. I think that those factual scenario, what has this whole thing in play is he has these medical conditions, more than one. He has psychological issues as well. He's an 89-year-old man in a wheelchair. He has vast cardiac problems, and those cardiac problems, they basically appear to have played funny business on how to cover themselves and how to treat that medical problems by not treating him and saying that he doesn't need treatment. Therefore, approximate cause of his ultimate death is they ship him to a place, Haylton, that doesn't have the appropriate medical care, and therefore they deny him the medical care. In Ziegler, the Supreme Court made clear that Carlson should not be interpreted to apply outside the precise context at issue in that case and noted that even claims challenging the adequacy of medical care, which you seem to be challenging, may not involve the same right and mechanism of injury, still present a different context, a new context. Your Honor, in Carlson, the facts that we have from that case are that there were medical things done that were contraindicated. There were medical things that were not done that should have been done, and ultimately he was an asthmatic, and ultimately he died. So it's difficult. Was Mr. Bulger an asthmatic? No, he wasn't. He was a cardiac patient. So I don't believe that the Supreme Court, when it's asking us to follow the two-step analysis, says that unless it's an asthmatic patient, we're not going to touch it. That means any other medical condition is out. I don't take it to that degree. I may be wrong. But going back to Judge Diaz's point, this is more about his transfer to Hazleton and that being inappropriate, isn't it? That's part and parcel of what's going on in the middle of his medical treatment. That's correct. Instead of taking him to Butner, for instance, they sent him to Hazleton that doesn't have the kind of medical care available. But it wasn't the constellation of health conditions that killed him. It was, under your theory, the fact that the prison officials transferred him to a prison, which you allege is notorious for its violence and the like, and he didn't even last a day there. That's not really an Eighth Amendment cruel and unusual punishment case based on deliberate indifference to medical needs, but something entirely different, isn't it? Your Honor, it's correct that his ultimate death did not occur from a medical condition. That's correct. Right, and that might be why you don't have that in your complaint, at least not that I can see your complaint at paragraph 3, says the plaintiff brings claims for injuries and death arising from the defendant's deliberate indifference to the substantial risk of harm in their failure to protect from harm and or to prevent the harm. That's correct. Not indifference to his medical needs. That's what we had in our complaint based upon the few facts that we had at the time. Can we stand by that? You haven't changed your complaint, have you? We don't have the facts to change our complaint, Your Honor. Well, we have to deal with what the complaint is. We have to deal with what the complaint is. And the complaint in paragraph 3 talks about not deliberate indifference to medical needs, but indifference to the substantial risk of harm and failure to protect. So is failure to protect not a new Bivens claim? Your Honor, that is not going to stand muster under Bivens. That's correct. But at the point that we file this complaint, we're going to catch 22. We don't have the facts necessary to talk about it. I don't understand. If what I just read to you from your complaint doesn't withstand muster under Bivens, if you just said, then why was the district court incorrect to dismiss your complaint? Because we are bound to file the best complaint we can based upon facts that we have. And this is an unusual thing with prison cases. We don't have access to the facts. They control the location. You can't just file anything and then, I mean, that's a fishing expedition is what you're talking about. No, we do the best we can with what we know, Your Honor. And so with the time that I have, I would like to talk about why this case should not have been dismissed also under FDCA. Well, I have a question about that because in Rich, which this court decided in 2015, it says prison officials are afforded discretion in determining where to place inmates and whether to keep them separate from each other. These decisions invoke policy considerations, and the discretionary function exception applies. And I didn't really see anywhere in your complaint that you allege careless, lazy, or inattentive conduct, which appears to be sort of an exception to the discretionary function exception. So can you help me understand that better? Well, the complaint throughout, Your Honor, talks about failures. It doesn't use the word lazy because we don't know. We don't know why in the world they would do what they did. We just know that he was outrageously placed in a position where he didn't last but a few hours. And those discretionary function exceptions, it's a continuum. Galbert, the case that sets that analysis, is talking about policy in the sense of economic policy, in the sense of banking policy, regulatory policy for banks. But how about that language in Rich I just read to you? Rich focused on two things. Rich focused on whether CIM, essential inmate monitoring, can be a basis. And very plainly said, no, you can't pick apart the discretion about where they place somebody that's like Rich. Rich is a nobody. He's not well-known. He's not somebody that has policies that apply to him for notorious and well-known inmates, which is a policy we believe was violated in this case because Mr. Bulger is everything under that. But the point is that policy, if it is in fact discretionary, then as Judge Eagles pointed out, that falls under the exception to the FTCA. And it really doesn't matter whether or not the discretion is abused or not. So long as officials have discretion, even if they exercise that discretion incompetently, you have no claim. Your Honor, I respectfully have to disagree with that because of Andrew Lonis and Colt Hurst, which this Court cited in Rich, and that is there's a limit. There's a limit as to when we can step back and say, you know what, you can't show us a policy, or, you know what, discretion takes care of all this. There's a limit to that analysis. You can't say that because there wasn't a policy that you shouldn't put a can of gasoline next to a fire, that the fact that everything blew up, there could be no cause of action. In Andrew Polis, it was about a lab in which the doctor there, Dr. Bauer, he didn't do apparently any normal safety thing that you would do in a lab, and it caused grave consequences. I believe somebody died from a toxin. In Colt Hurst, a much more minor injury, but an injury all to the same, cited by this Court in Rich, was about equipment, exercise equipment, and a frayed cable. And so the Court's saying in those cases, look, there's a limit to when you can hide behind the DFE, discretionary function exception. There's a limit to that. This case is in that limit, and we're asking this Court to give us the chance to go back and get the facts that will show to a Court in the district level that, yes, this is a case that should be tried on its merits and get to a result, whatever that might be. I see that my time is expiring, and I will reserve the remainder of my time and let my friend and colleague make his argument. Thank you, Mr. McCormick. You've got some time left. Mr. Totaro? Yes, sir. Your Honors, and may it please the Court, Martin Totaro on behalf of the Federal Bureau of Prisons and the individual defendants. The district court in this case correctly dismissed both of the types of claims brought by the estate, the FTCA claims and the Bivens claims. I'll start with the FTCA claims unless the Court wants me to address Bivens. The FTCA claims are controlled by this Court's holding in Rich. There was at step one of the discretionary function exception inquiry no directive that prescribed a specific and mandatory course of action. Now, the complaint here cites the general safekeeping statute as imposing that duty, section 4042, but this Court in Rich already held that those types of general duties do not impose a specific and mandatory requirement under the first step of the discretionary function inquiry. So Mr. McCormick at the tail end of his argument went through a litany of cases that he suggests warrant a different result here because apparently in those cases, even with the discretionary exception, the Court found a basis for liability. How do you distinguish the cases? Your Honor, I think those cases are dealing with step two. And at step two, again, this Court in Rich squarely held that transfer and placement decisions implicate public policy considerations of, quote, available resources, proper classification of inmates, and appropriate security levels. And then the Court explained that prisoner placement and the handling of threats posed by inmates against one another implicate public policy. And so I think this Court's holding in Rich squarely answers the question at step two. And in fact, as I recall in Rich, we found otherwise with respect to the particular requirements for searching inmates that we concluded that there was no discretion authorized or allowed for the officials, and at least there was an issue that could be tried and the discretionary exception didn't apply. Is that right? So, yes, Your Honor. Rich is an incredibly carefully crafted decision. I hope so because I was on the panel. Yes, Your Honor. So it goes through what I just said, no duty under Section 4042, and then transfer and placement decisions, which are what clearly are at issue here, fall under implicate questions of public policy. Now, there was an exception at the end of the opinion where the Court was talking about a 9-inch knife that was found in a prison courtyard after there was already evidence in the record that the guards were supposed to search every individual going into that courtyard. And so this Court said, here's a quote, in spite of a prison official's averment that each performed the required searches properly, it wasn't done here or at least it's sufficient to go into discovery. That's at page 147. So I guess Mr. McCormick's point is that there might be something like that in this case. He just hasn't been granted the discovery sufficient to make out that claim. And I'll give you an example. I don't know if that exists here because it doesn't appear that Mr. Bolger was around long enough for this. But I know prison officials routinely require their officers to check on inmates every two, three hours, particularly if somebody's suicidal. There's a policy in place. You have to go by and check to be sure the inmate is okay. And if there were a violation of that policy, it would seem to me that that would fit maybe squarely within that exception to the exception that you just talked about with respect to the knife. Is that right? I'm not quite sure, Your Honor, because I think in Your Honor's example, I still think that would fall into the first part of the holding in Rich where it's talking about keeping inmates separate from other inmates implicates questions of public policy. And there's no at step two and then at step one there's no policy. Well, there's that broad statement. But then if you have a specific requirement that you must do this every two hours, you've got to go check. And they don't do it. Understood, Your Honor. And so if there is that specific requirement, then I think that gets you closer to what the court said at the end of Rich where we're talking about a procedural requirement and there was already evidence in that case. Well, I guess that's what your friend on the other side is suggesting that this case is. That is incorrect because unlike Rich where there's already record evidence about guards saying, yeah, I was supposed to, I patted everyone down. I was supposed to before they get into the courtyard. It didn't happen. That required procedural step isn't here. And I think to get to Judge Thacker's point, that would be a contrary holding in this case where you don't have that element that was present in Rich would allow for what I think opposing counsel candidly concedes would be discovery in every sort of FTCA case where you can just allege, look, I don't know what the policy is, but there could be some sort of unwritten policy. But that is very much not the way this Court go about handling these types of decisions in discretionary function exception cases. So, for example, the Court didn't say in Pornomo or Seaside Farm or Souter or those types of cases, look, there's no evidence in the record, but there could be, so why don't we allow discovery to go forward? I think that would create a ---- Is it your burden to show that the discretionary function exception applies? No, Your Honor. To the contrary, under this Court's precedent in Seaside Farm, it is the plaintiff's burden to show that the exception does not apply. Thank you. And so I think that this would result in fishing expeditions in every sort of discretionary function exception case and as well as in every Bivens case because I think as ---- I'll keep focusing on the FTCA, but as just to make a side point, I think, you know, the reply brief at page 4 candidly concedes that under their view, every Bivens case would require discovery, at least on the special factors inquiry, which is very much not the way the Supreme Court or this Court has gone about that inquiry. Unless there are further questions about the FTCA, I'll move on to the Bivens discussion or the Inspector General report, whatever this Court prefers, but I'll just start with Bivens. And so in Bivens, I think there is no serious argument that this case doesn't present a new context under Bivens. Here we're talking about a transfer and placement decision that simply wasn't at issue in Carlson where we're talking about treatment of an asthma condition. Instead, in the opening brief and in the reply brief, what the estate relied on was the Supreme Court and Farmer saying implicitly that all types of prisoner-on-prisoner violence had been recognized by the Supreme Court. That is not what the Supreme Court did there, and that was recently explained by this Court in its recent Tate decision, which said the Supreme Court has been very clear about the three very particular contexts in which it has recognized Bivens' cause of action. Farmer isn't one of them. So what is your best argument that special factors counsel against recognizing this new context? Your Honor, I think the district court had it right when it said in this particular prison context, the burden on the prison system itself represents a special factor. That falls squarely within this Court's discussion in Earl where you're talking about when you're in the context of a Federal prison, the potential for these sorts of claims to flood the system and interrupt prison management constitutes a special factor. And I should also note that that discussion in the district court's opinion went unanswered in the opening brief. Now, there are also other independent special factors that the district court addressed, the statutory and regulatory scheme governing Federal prison transfers and placement, and as well as the administrative remedy program. Now, there's been a lot of — How could he have availed himself of that administrative remedy? He was dead before he would have had the chance to. So, Your Honor, the Supreme Court and this Court have been clear that the availability of a remedy, the focus there is on separation of powers, not on whether the particular plaintiff had a particular right to relief. And so the only question is whether Congress or the executive branch has put a remedy in place. And so, for example, in this Court's Zimbelman decision, the particular plaintiff's there didn't have it. Even if the remedy is useless in a particular case? Your Honor, the same was true in this Court's Zimbelman case where the particular plaintiff employees didn't have access to the Civil Service Reform Act. And more recently, the Supreme Court in the Egbert decision explained that the question isn't whether a particular individual has access to the remedial program or what this Court has said in its Tuncos decision. That question misses the point. Rather, the point is whether the executive branch, whether or whether Congress has addressed this issue. Because then the question turns to, as a matter of separation of powers, should the judiciary be in the business of supplementing that existing remedy? Just turning to the OIG report, unless there are questions on Bivens. So the OIG report doesn't affect this case at all for a couple of reasons. First, it says nothing. So I'm clear about that. You don't object to the report being before us, or do you? No, Your Honor. The government was actually trying to be incredibly reasonable and say, we don't think it's proper to supplement the record with this report, but just file it as a 20HA letter so it's before the Court. And now, you know, I think the plaintiff has put it before the Court twice now. And so, and the government responded to what that report does and doesn't do. What does it do? It provides several, 11, I think, policy recommendations, and then there's an engagement with the Bureau about how to implement those policy recommendations. But it's also clear that, you know, pages, in the introduction and again at page 51, the results of the report are not because, or any deficiencies in what happened with Mr. Bolger's death were not the result of policy violations or malice intent, but other sorts of deficiencies, and then the report goes through some recommendations for them to consider. And so there are three spots in the Inspector General report that could arguably be interpreted as potential policy violations. First, in the opening, opposing counsel talked about potential manipulation of Bolger's medical care, like changing it from a level three to a level two, which would allow the transfer to Hazleton. But the report on pages 50 and 57 are clear, is clear, and it says, look, either of those designations is reasonable. And so there was no policy violation there. The report. Okay. But I gather your argument is that even if it was, it still doesn't make out a claim. So the report, there is no policy violation on that question, and so I think that's what sits before the Court. So to use Your Honor's framework, taking the report as true wouldn't move the dial, wouldn't move the needle on whether there's a viable claim here. And so the Court could, of course, wait to address that issue until the estate files its, if it chooses to file an appeal from the district court's denial of its recently filed Rule 60B motion, and that's certainly one option for this court to take, although I will note that the report is before the court now. The government has explained why the report doesn't assist, doesn't revive those particular claims, and the estate has not come back with any meaningful substantive response. So the court could address the report now, or it could wait until the notice of appeal is filed there and then perhaps consolidate with this case. But I say that with one caveat. I think the report, while it doesn't affect the case at all, it does not remotely affect the propriety of the Bivens claims at issue here. And here we're talking about individual officers sued in their personal capacity, and so every time they go for, you know, a loan, a mortgage, et cetera, and they have to decide whether, or they have to write down whether they're being sued, I mean, that's something they have to put down now. And so the government is, I'm very much interested in having those Bivens claims decided at this juncture, even if the court were to consolidate the appeal if the Bivens claims were to be sued. Unless this court has any further questions, the government thanks you for the time, and we ask that the district court's judgment be affirmed. Thank you, Mr. Totaro. Mr. McKemmick. Thank you, Your Honors. In rebuttal, I'll start with the FTCA issue first, and that is, excuse me, that is, we're not relying just on 42, 40, 42. This is a safekeeping statute. Sledge and Ignatieff, both are cases in which the court said in Sledge, a plaintiff can't be held to knowing the policies when they make the complaint, i.e., discovery was needed in that case to find out what policies were actually violated. These policies are not published. You can't pull them out of a library. Some are, but not all of them. In Rich, which I know Justice Tiazan, I think Justice Thacker was at the oral argument, we later found that there were policies, internal policies, directly on the search issue, which ultimately settled the case. Those were not acknowledged to anybody until the discovery happened. So Sledge and Ignatieff both say there should be some discovery. Well, now you have the report, and opposing counsels suggest that the report does not make a difference, doesn't move the dial at all. What's your best argument that something in the report does? First of all, I mentioned the report only in the fact that it had not been disclosed or made a part of the record. Apparently, it's adjudged to be part of the record, and I'll speak to it. So the report is a bit of inconsistencies in terms of some policies have been violated, apparently, some policies that are not aware are there, they can't find a policy on a certain issue, and it gives a good roadmap, but it doesn't solve all our problems in terms of facts in this case. It's not a panacea for both sides, either side. It gives some self-serving language, as opposing counsels pointed out, that we haven't done anything wrong here, there's no evil intent, and we haven't violated any policies. But within the report itself, it talks about policies that were apparently violated. So the important thing about the report is it's not law. It's a factual report of a government agency that gives us a view of what could happen in discovery. We could follow this as a guide or a map, and we could get to some real facts about how this tragedy occurred. Can you be specific? I mean, the burden is on you, right, to show that the exception does not apply. You agree? We're talking about the DFA, the discretionary function exception? Yes. The specifics in this case, we don't know precisely how it happened, but what we do know from the OIG report is they did not follow some of their own policies, and I can't cite you that they're in the report, and they don't cite them by name or number, but they cite them as, in the generality, policies regarding the notoriety of the inmate, policies regarding medical care, things of that nature. So they have to be parsed out to get the actual site numbers of those policies. I don't know what they are. There are also policies that are alluded to, which I think are going to happen just like Rich, that are post-orders, internal guidance, things like that, that tell them how they should have acted. At this point in time, all we know is that the OIG states that this is outrageous. It should never have happened to any inmate, whether it be Mr. Bulger or anybody else, but you know what? We don't think any policies are violated, and everybody move on. Nobody gets fired. Nobody gets suspended. Nothing happens. This becomes a part of the record in terms of the BOP, and there are recommendations of how you might fix things. So that's the importance of the OIG report. It's a guideline. It's a map to help us in discovery. I still think discovery is necessary. And as to Bivens, it's clear that the Supreme Court is basically choking Bivens to death. I mean, there's very little left in Bivens for a plaintiff to move forward on. We think that discovery may show that that's true, cannot move forward, or discovery may show, wait a minute, this is actually close enough and meets the standards necessary under Ziegler v. Abbasi, Carlson v. Green, that, yes, you can move forward on the Bivens claim. And with that, Your Honor, my time is almost up, and I thank the court for its time. And we address any questions if the court has any. Thank you both for your arguments. The case is under advisement. And again, we'd like to come down and greet you, but we can't. So at this point, we're going to take a five-minute recess before proceeding with our case.
judges: Albert Diaz, Stephanie D. Thacker, Catherine C. Eagles